**Dewey M. RUMFELT, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18219.**

United States Court of Appeals,
Seventh Circuit.

June 15, 1971.

Certiorari Denied Oct. 12, 1971.

William W. Schooley, Granite City, Ill., H. Carl Runge, Granite City, Ill., for appellant.

Henry A. Schwarz, U. S. Atty., Jeffrey F. Arbetman, Ronald A. Lebowitz, Asst. U. S. Attys., East St. Louis, Ill., for appellee.

Before DUFFY, Senior Circuit Judge, STEVENS, Circuit Judge, and CAMPBELL, Senior District Judge.[1]

DUFFY, Senior Circuit Judge.

Defendant (appellant) was convicted of attempted bank robbery in violation of Title 18 U.S.C. § 2113(a) which statute provides, in part: "Whoever * * * attempts to enter any bank[2] * * * or any building used in whole or in part as a bank * * * with intent to commit in such bank * * * any felony affecting such bank * * * shall be fined not more than $5,000 or imprisoned not more than twenty years or both."

Alto Pass, Illinois, is a small town. Among the buildings are a small grocery store and a small bank (Farmers State Bank) which are located adjacent to each other on the main street.

On February 29, 1968, witness John D. Aldrich left the grocery store about 1 p. m. intending to drive his automobile truck which had been parked in front of the store. As he neared his truck, he saw a masked man with rifle in hand standing beside an automobile parked near the truck and in front of the bank. Aldrich testified the masked man pointed the rifle at him and said "get in the bank." They both walked toward the bank and Aldrich attempted to open the door but discovered it was locked. Aldrich told the masked man he could not get into the bank and the masked man who was standing a short distance behind him came up to the building and looked in the window. He then told Aldrich to get out of town, and Aldrich got into his truck and left town.

Aldrich described the car which the masked man was using as a '64 model Oldsmobile with a dark top and a slightly lighter body.

State Trooper Draves who had been a State Trooper for fourteen years, testified that on the same February 29, 1968 afternoon when he was on patrol, he received a radio dispatch in response to which he proceeded east on Route 3, a gravel one-way road. Draves came to a "T" intersection and turned north.

Shortly thereafter, Draves saw a "black over gray" 1964 Oldsmobile approaching him at a high speed going south. Draves thought that the coming

---

1. Senior District Judge Campbell is sitting by designation.

2. 18 U.S.C. § 2113(f) provides: "As used in this section the term 'bank' means any member bank of the Federal Reserve System * * * and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation."

car matched the description given in the radio dispatch. The testimony is that the Oldsmobile passed Draves within a distance of about thirty feet. Draves testified that as the driver of the Oldsmobile was passing, he (the driver) "reached over with his right hand and picked up what appeared to be an army carbine off the front seat by him, braced over to the front, the clip facing upwards and pointed it in his general direction." Draves identified defendant (appellant) Rumfelt as the man who was driving the Oldsmobile.

Trooper Draves made a "U" turn and followed defendant's car at a high rate of speed. After covering about two miles, Draves saw the defendant running from the car into a woods, and noted he was carrying a carbine.

Draves made an examination of the contents of the Oldsmobile and found a 1964 Missouri license plate, a brown corduroy jacket and a gold ski mask.

A short while later, and after making contact with a police aircraft, Trooper Draves saw defendant Rumfelt emerging from the woods, clad in a green checkered shirt and wash pants. He was placed under arrest at that time.

Trooper James Turner and Illinois State Police Investigator Reincke began a search of the same woods with a German Shepherd tracking dog. The dog found fresh tracks and led them to a pair of overalls and a blue sweat shirt before losing the scent. After returning to the abandoned Oldsmobile and giving the dog a scent from the ski mask which was found there, the dog led them to a suitcase which contained some clothing, assorted personal toilet items, a letter addressed to Rumfelt and a medication bottle with a prescription made out to Rumfelt. The letter and bottle were introduced into evidence at trial.

The woods in question was surrounded on three sides by water. On the first tracking on February 29th, the dog led the State Troopers to a certain point leading off into the water. The next day, State Troopers returned to this same spot and eventually uncovered an M-1 carbine, a .22 caliber pistol, two clips of ammunition, binoculars in a case, and a belt all in the water. The Government marked these items and attempted to introduce them at trial, but the Court did not admit these items even though witness Aldrich had testified that the man who accosted him had a gun that looked like Government Exhibit 11 (the pistol), and Trooper Draves testified that the man who had passed him in the Oldsmobile had a carbine in his hands.

Defendant contends that the testimony in this case does not establish proof of the act of attempted entry of a bank with intent to commit a felony as charged in the indictment. We disagree.

We recognize, of course, that "Much ink has been spilt in an attempt to arrive at a satisfactory standard for telling where preparations end and attempt begins", Mims v. United States, 375 F. 2d 135 (5 Cir., 1967). We note also that "The classical legal elements of an 'attempt' are the intent to commit a crime, the execution of some overt act in pursuance of the intention and a failure to consummate the crime", United States v. Baker, D.C., 129 F.Supp. 684 (1955), and that "preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature. * * *", People v. Buffum, 40 Cal.2d 709, 256 P.2d 317.

■■ We feel that enough evidence was submitted for the jury to find that an attempt under the statute had been made in the present case. We do not deem fatal the fact that defendant never actually entered the Farmers State Bank. As we have stated on several occasions, an actual entry is not required under the statute. "Rather the heart of the crime is the intent to steal." United States v. Schaar, 437 F.2d 886, 887 (7 Cir., 1971). Pertinent also is the Supreme Court's language in Prince v.

United States, 352 U.S. 322, 326, 77 S. Ct. 403, 1 L.Ed.2d 370 (1957) that a person need only " ' * * * attempt to enter * * * with intent to commit in such bank or building thereof, * * * any felony or larceny * * *.' " Clearly, the jury could find that such an intent existed here and that the requisite overt acts had been committed toward that end. The presence of defendant in front of the bank clad in a mask, along with his use of a carbine to intimidate a hostage, and the use of that hostage in an effort to get inside of the bank were all facts which would support that finding.

Defendant's second contention is that Trooper Draves' identification of defendant as the man in the 1964 Oldsmobile was so incredible as to be insufficient as a matter of law without corroboration. In brief, defendant argues that no positive identification was possible in the few seconds which elapsed while the Oldsmobile was passing Draves' car.

■■ It was, of course, a matter for the jury as to whether the testimony of Trooper Draves was credible or incredible. Certainly, there was nothing inherently incredible as to his testimony. Furthermore, it is well established that this Court must consider the evidence in the light most favorable to the Government. United States v. Reed, 329 F.2d 865 (7 Cir., 1968). Moreover, we note that the testimony of Deputy Sheriff Kelly tends to corroborate Draves' testimony and that on the afternoon of February 29, defendant was the only person seen coming out of the woods which was surrounded on all other sides by water.

■ Defendant next argues that the Government's attempt to admit the carbine and pistol was prejudicial error. In effect, defendant accuses the Government of bad faith in offering two weapons into evidence. The record indicates that while the two weapons were shown to witnesses, they were not displayed to the jury. From the record, we are convinced that the jury could have inferred from the uncontradicted evidence that the weapons found under the ice at the point where the dog lost defendant's scent, were the property of the defendant. However, neither weapon was admitted in evidence, and we think there was no reversible error in this respect, nor was any bad faith on the Government's part shown which would warrant reversal.

■ Nor do we think that any error was committed by the trial court in admitting the ski mask, the brown jacket, the letter and the medicine bottle into evidence. These items were connected to defendant through the qualified tracking dog and by the positive identifications of the trooper.

■ Finally, we come to defendant's contention that prejudicial error was committed by the trial judge when he asked certain questions of some witnesses. Most particularly, defendant objects to the judge's questioning of F.B.I. Agent Graper regarding fingerprints on the 1964 Oldsmobile. On cross examination, Graper testified that no identifiable fingerprints could be found on the vehicle. The Court then questioned Agent Graper regarding latent fingerprints and at one point asked: "So are we to understand that there were latent fingerprints on the automobile, on the '64 Oldsmobile, but that none were identifiable because they were either overlays or smudged?" Graper replied: "That is correct, your Honor." Defendant contends that this line of questioning led the jury to believe that the Court had formed an opinion on an issue properly for the jury.

The matter of a trial judge's questioning of witnesses is quite sensitive as we indicated in United States v. Knaack, 409 F.2d 418 (7 Cir., 1969). However, we do not believe that any reversible error was committed by the trial judge in the present case. The questions were not extensive. Moreover, they were accompanied by a lengthy cautionary instruction.

We have reviewed defendant's other contentions and find them to be without merit.

The judgment of conviction is

Affirmed.