UNITED STATES of America, Plaintiff-Appellee,

v.

Dan Frederick SCHRAMM, Defendant-Appellant.

No. 82–2626.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1983.

Decided Aug. 31, 1983.

As Amended Sept. 1, 1983.

Rehearing and Rehearing En Banc Denied Jan. 10, 1984.

Stephen P. Juech, Milwaukee, Wis., for defendant-appellant.

R. Jeffrey Wagner, Barbara B. Berman, U.S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, CU-DAHY, Circuit Judge, and DUMBAULD, Senior District Judge.*

DUMBAULD, Senior District Judge.

This case presents a close question with respect to the application of the familiar distinction between preparation and attempt to commit a crime. Upon reflection we conclude that defendant's activities had gone far enough that a conviction for attempted bank robbery in violation of 18 U.S.C. § 2113(a)[1] will be sustained.

 This Court set forth the pertinent legal analysis in *Rumfelt v. U.S.,* 445 F.2d 134, 136 (7th Cir.1971):

We recognize, of course, that "Much ink has been spilt in an attempt to arrive at a satisfactory standard for telling where preparations end and attempt begins," *Mims v. United States,* 375 F.2d 135 (5 Cir., 1967). We note also that "The classical legal elements of an 'attempt' are the intent to commit a crime, the execution of some overt act in pursuance of the intention and a failure to consummate the crime", *United States v. Baker,* D.C., 129 F.Supp. 684 (1955), and that "preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter,

and the act must not be equivocal in nature. * * *", *People v. Buffum,* 40 Cal.2d 709, 256 P.2d 317.

We feel that enough evidence was submitted for the jury to find that an attempt under the statute had been made in the present case. We do not deem fatal the fact that defendant never actually entered the Farmers State Bank. As we have stated on several occasions, an actual entry is not required under the statute. "Rather the heart of the crime is the intent to steal."[2]

The unusual and ingenious defense in the case at bar, if accepted by the jury, would have required acquittal for lack of any intent whatever on defendant's part to enter and rob the bank.

Defendant asserted that his purpose at all times was merely to set the stage for obtaining the sexual favors of his accomplice (the government's informant and chief witness at the trial) one Ricardo Reyes. According to the defendant's version of events, his meticulous preparations for robbing the bank were merely an elaborate charade designed to effectuate an assignation.

However, as the Government argues (Brief, p. 2):

Dan Schramm's intent to rob the bank is established by his words and his deeds. His physical attraction to Ricardo Reyes

---

* The Hon. Edward Dumbauld, Senior U.S. District Judge, of the Western District of Pennsylvania, sitting by designation.

1. "Whoever enters or attempts to enter any bank . . . with intent to commit in such bank . . . any felony affecting such bank . . . and in violation of any statute of the United States, or any larceny" shall be fined "not more than $5000 or imprisoned not more than twenty years, or both." Other substantive provisions of § 2113(a) and of § 2113(b) would amount to felony.

2. In *Rumfelt* the defendant was standing outside the bank with gun and mask but fled when it was found that the door was locked. The same analysis was followed in *U.S. v. Green,* 511 F.2d 1062, 1072 (7th Cir.1975). See also Francis Bowes Sayre, "Criminal Attempts," 41 Harv.L.R. (May, 1929) 821, 843–47. As Professor Sayre points out "The line between prepa-

ration and attempt . . . must at best depend largely upon the particular circumstances of each case—the seriousness of the crime attempted, and the danger to be apprehended from the defendant's conduct. . . . [T]he more serious the crime attempted . . . the further back in the series of acts leading up to the consummated crime should the criminal law reach in holding the defendant guilty for an attempt." *Ibid.,* 845. Professor Beale likewise states: "The attempt must come sufficiently near completion to be of public concern. How near to success the attempt must come is obviously a question of degree to be determined in each case upon the special facts of the case . . . [T]he real reason for punishing attempts . . . is . . . the danger to the public. . . . The difference between an act of preparation and an attempt is merely one of degree, and is exceedingly difficult to apply." Joseph Henry Beale, Jr., "Criminal Attempts," Harvard L.Rev. (May, 1903) 501–03.

supports rather than discredits this interpretation of Schramm's actions. It is clear that Ricardo Reyes had only an economic interest in Dan Schramm. Therefore, Schramm's effort to woo his fellow inmate into bed and his own desperate financial situation in the winter of 1982 creates a irrefutable motive for the commission of a bank robbery.

Besides the need for money if the sexual liaison was to flourish, defendant's intent to rob the bank could be inferred by the jury from his repeated statements to Reyes. It is purely a jury question of credibility to determine whether Schramm was telling the truth when he told Reyes what he was planning to do, or whether he was telling the truth when he told the jury that the bank robbery plan was merely a pretext designed to entice Reyes to the hotel room as a sex partner. The jury was quite warranted in disbelieving defendant's story at the trial, and in finding that his intent to rob the bank had been proved by the Government.

Defendant's conduct was consistent with a genuine plan to rob the bank which was thwarted only by the F.B.I.'s premature[3] arrest of Schramm before he got close to the bank.

On the day of the planned robbery Reyes met Schramm at 1:30 with the innocent agent David Brand who was recruited to hire a hotel room as "getaway" headquarters, and leave their suitcases containing the masks and other apparel to be used in the robbery, as well as the bomb which Schramm had manufactured. (Examination by law enforcement officers after defendant's arrest demonstrated that the device was a harmless "dud." Whether Schramm purposely built an inoperative device or it was merely defectively designed and was incapable of serving its purpose was a jury question.)

Schramm had an appointment with his parole officer for 2 p.m., but before that Reyes and Schramm went to obtain money for payment for the hotel room, then picked up Brand and dropped him off at the hotel with the suitcases. They then drove to the parole office about two miles from the bank, where they arrived at about 2:35 p.m. If Schramm had not been arrested there they would have gone to Reyes' house to pick up the walkie-talkies Schramm had procured for use in the robbery. The bank and hotel were located in the same building.

Schramm contends that he was stalling and expected to arrive at the bank after it closed at 5 p.m. and then to persuade Reyes to accompany him to the hotel room for sex activity. Defendant's veracity in this story was a question for the jury.

On the whole, we are convinced that defendant had engaged in sufficient substantial steps to effectuate the criminal enterprise that the jury (believing the Government's evidence and rejecting Schramm's bizarre story, as they were free to do) could properly find an attempt. His activities had progressed beyond mere preparation to such a stage that the crime would have come to pass in the due course of the normal train of events had not an extraneous force (the action of the F.B.I. in arresting him) intervened.

Defendant also raises other subsidiary points regarding the admissibility of evidence and adequacy of representation by counsel. We have reviewed these points and find them without merit. We are unpersuaded by counsel's diligent and ingenious arguments in that connection. Schramm's best defense was the unusual claim that his entire plan to rob the bank was a hoax, designed to impress Reyes and procure sexual gratification. When the jury, as it was free to do as trier of the

---

3. Defendant was arrested at the office of his parole officer. The Government argues (Brief, p. 5) that the "timely intervention" of the F.B.I. "prevented not only a robbery but ... the arrest eliminated possible bloodshed in the downtown area." This is largely a matter of judgment and courts should not second-guess officers on the firing line, but it seems unlikely that Schramm could not have safely been arrested closer to the vicinity of the bank after a more unequivocal demonstration of his firm intent to enter the bank.

facts, disbelieved defendant's story, his conviction was warranted and must be upheld.

The judgment below is modified to the extent that it recites a conviction of intent, instead of attempt, to commit bank robbery, an obvious clerical error, and is in all other respects

AFFIRMED.

CUDAHY, Circuit Judge, concurring.

Schramm was arrested while on a visit to his parole officer on the northeast side of Milwaukee in the middle of the afternoon. After that, under the government's theory, he ostensibly planned to pick up some equipment on the south side of the city before doubling back again to rob a downtown bank before its five o'clock closing. The majority cites no case—and I know of none—in which even remotely comparable facts have been held to constitute an attempt to enter a bank with intent to rob it. I concur here only because of my impression that the government agents could have been genuinely and reasonably concerned about the threat to the public safety of Schramm's "bomb" and hence made a quite premature arrest. Any other interpretation of this case would render completely meaningless whatever is otherwise comprehensible in the distinction between preparation and attempt in the criminal law. It is exceedingly difficult to find here "some appreciable fragment of the crime committed...." *Rumfelt v. United States*, 445 F.2d 134, 136 (7th Cir.), *cert. denied*, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 94 (1971).