**UNITED STATES**

v.

**Russell C. GUGLIOTTA, 084–42–6729, Sergeant (E–5), U.S. Marine Corps.**

**NMCM 86 3359.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 27 March 1986.

Decided 10 Feb. 1987.

CDR Frederick N. Ottie, JAGC, USN, Appellate Defense Counsel.

Maj R.P. Walton, USMC, Appellate Defense Counsel.

Capt Wendell A. Kjos, JAGC, USN, Appellate Government Counsel.

George Martin Kripner, Esquire, Civilian Defense Counsel.

Before GORMLEY, C.J., and RILEY and GRANT, JJ.

PER CURIAM:

At a judge-alone general court-martial, appellant was found guilty, pursuant to his pleas, of sundry specifications of violating Articles 80 (Attempt), 81 (Conspiracy), 86 (Unauthorized Absence), 95 (Escape From

Custody), 112a (Marijuana Use), and 134 (Breaking Restriction) of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 881, 886, 895, 912a, 934. He was sentenced to be reduced to pay-grade E–1, to be confined for a period of eight years, and to be discharged from the Marine Corps with a bad-conduct discharge. The convening authority suspended confinement in excess of 3 years for 12 months from the date of trial, pursuant to the terms of the pretrial agreement, and approved the remainder of the sentence as adjudged.

The record of trial was submitted to us for review without specific assignment of error. Upon review of the record, we affirm the findings of guilty. We deem it appropriate, however, to comment briefly upon the providence of appellant's pleas to the two specifications under the Additional Charge, alleging attempted robbery of the Marine Corps Exchange (MCX) at Yuma, Arizona, on 26 and 27 November 1985.

During the inquiry into the providence of his pleas to these two specifications, the appellant related that he and his three accomplices had made plans to enter the cash cage of the Exchange upon its opening for business at 0700, force the woman working there to open up the safe and give them its contents, and tie the woman up while they would make good their escape. In furtherance of this plan, the appellant and his cohorts obtained masking tape with which to bind the woman and a bag in which to carry the loot. Additionally, one of the conspirators obtained a handgun in order to avoid his apprehension by the law. On the morning of 26 November, they proceeded by car to the MCX with their criminal tools for the purpose of effectuating their criminal plan. Upon arriving at the MCX at approximately 0645, each of the actors took their agreed upon places, with the appellant positioning himself near the building, since he was the one chosen to enter it in order to confront the woman, force her to open the safe, and obtain the cash. The woman arrived and opened the door to the office, but the appellant, feeling that he "couldn't do it" because he "didn't

have it in [him]," decided not to go through with the plan. They left, only to return the very next morning for the same purpose. They again positioned themselves for the robbery, but, at about 0655, a man from the gas station came over to talk to the woman for a few minutes. He left almost immediately, but the appellant again decided not to go through with the plan. Again, the would-be robbers left the scene without setting foot in the building and without confronting the woman employee.

Upon hearing appellant relate these facts, the military judge informed counsel that he would be unable to receive pleas of guilty to the two specifications since "[t]here [was] no unexpected intervening act" and it appeared that the actions of the appellant comprised mere preparation to commit the robbery rather than perpetration thereof. *See United States v. Ferguson*, 2 M.J. 1225 (N.C.M.R.1976). Both trial and defense counsel opined that the appellant could in fact plead guilty to the specifications under the circumstances related by him, and asked the military judge to continue with the providence inquiry. Upon further inquiry, the judge obtained information relating to the tools brought by the appellant and his co-actors to commit the crime and to the proximity of the appellant to the MCX building before he decided not to go through with the robbery. He then accepted appellant's pleas as being provident.

The military judge was not misguided in his concern about the providence of appellant's pleas. "The line of demarcation between preparation and a direct movement toward the offense is not always clear." *United States v. Choate*, 7 U.S.C.M.A. 187, 21 C.M.R. 313, 317 (1956). " 'Much ink has been spilt in an attempt to arrive at a satisfactory standard for telling where preparations end and attempt begins.' " *United States v. Schramm*, 715 F.2d 1253, 1254 (7th Cir.1983) (quoting *Mims v. United States*, 375 F.2d 135 (5th Cir.1967)). "Primarily, the difference is one of fact, not of law," *Choate*, 21 C.M.R. at 317, and "must at best depend largely upon the par-

ticular circumstances of each case." *Schramm, supra* at 1254 n. 2 (quoting Francis Bowes Sayre, "Criminal Attempts," 41 Harv.L.R. (May, 1929) 821, 843–47). The factual circumstances related by the appellant during the inquiry into the providence of his pleas reflect the classic "mere preparation versus perpetration" attempt situation.

Article 80 of the UCMJ defines attempt as "[a]n act, done with the specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission...." The Manual for Courts-Martial, United States, 1984 (MCM) provides as two of the four elements needed to be proved in order to find an accused guilty of the offense that (1) the accused did a certain overt act, and (2) that the act was done with the specific intent to commit an offense under the code. MCM, Part IV, ¶ 4b(1) & (2). The MCM further defines an overt act as "a direct movement toward the commission of the offense," and explains that it "need not be the last act essential to the consummation of the offense" and that "an accused could commit an overt act, and then voluntarily decide not to go through with the intended offense ... [and] [a]n attempt would nevertheless have been committed...." *Id.* at ¶ 4c(2). The issue in the instant case, therefore, is not whether the completion of the crime was prevented by some intervening circumstance or entirely through the appellant's own volition, but whether the actions of the appellant and his companions constituted "a direct movement toward the commission of the offense." *Id.* We find that where the accused and his accomplices have planned to commit a robbery, where they procure the implements necessary to carry out their plan, where they proceed to the situs of the crime with the intention of committing the crime and with the procured criminal tools in their possession, and where they proceed to within feet of the building wherein the object of their criminal intentions lies, they have committed an overt act sufficient to constitute "a direct movement toward the commission of the offense," despite the fact that their failure to commit the crime occurs voluntarily and without them setting foot in the building, or without causing alarm to or being seen by any potential victims or passers-by. *See United States v. Choate*, 7 U.S.C.M.A. 187, 21 C.M.R. 313 (1956); *People v. Sullivan*, 173 N.Y. 122, 65 N.E. 989 (1903); *United States v. Schramm*, 715 F.2d 1253 (7th Cir.1983); *Hillie v. Maggio*, 712 F.2d 182 (5th Cir. 1983); *United States v. Snell*, 627 F.2d 186 (9th Cir.1980); *United States v. Stallworth*, 543 F.2d 1038 (2d Cir.1976); *United States v. Jackson*, 560 F.2d 112 (2d Cir. 1977); *People v. Vizcarra*, 110 Cal.App.3d 858, 168 Cal.Rptr. 257 (1980); *State v. Ward*, 601 S.W.2d 629 (Mo.App.1980); *People v. Gilbert*, 86 Cal.App. 8, 260 P. 558 (1927); *People v. Machen*, 3 Cal.App.2d 499, 39 P.2d 893 (1935); and *People v. Parrish*, 87 Cal.App.2d 853, 197 P.2d 804 (1948).

Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed. We have considered the appellant's clemency petition and the trial defense counsel's response to the staff judge advocate's post-trial review.