**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Julio DEL CARMEN RAMIREZ,
Defendant, Appellant.**

**No. 86–1277.**

United States Court of Appeals,
First Circuit.

Heard March 3, 1987.

Decided July 13, 1987.

Gustavo Adolfo del Toro, Hato Rey, P.R.,
was on brief for defendant, appellant.

Juan A. Pedrosa, Asst. U.S. Atty., San
Juan, P.R., with whom Daniel F. López
Romo, U.S. Atty., Hato Rey, P.R., was on
brief for plaintiff, appellee.

Before COFFIN and TORRUELLA,
Circuit Judges, and PETTINE,* Senior
District Judge.

TORRUELLA, Circuit Judge.

Julio del Carmen Ramírez was convicted
under the Hobbs Act after a jury trial in
the United States District Court for the
District of Puerto Rico. He was part of a
group of individuals who, admittedly, in-
tended to rob a Wells Fargo truck in front
of the Chase Manhattan Bank in Caguas on
August 22, 1985. Evidence at trial showed
he was recruited by the group shortly after
they selected and cased the robbery site on
August 15. The group planned to hold up
the Wells Fargo truck as it made its deliv-
ery to the bank and then to flee in a stolen
car. They would drive the stolen car to
where they had left a legitimate car,

* Of the District of Rhode Island, sitting by desig-    nation.

change to that second car, and leave the stolen car behind.

Early in the morning on the 22nd, Ramírez and two other members of the group arrived at the Caguas bank in the stolen car. All three were armed, Ramírez with a .45 caliber revolver. They looked over the area, then went into a nearby cafeteria to wait for the truck. Inside, they overheard someone say there were snipers stationed on the rooftops. Thus alerted to the stakeout, they aborted the robbery. The three men left the cafeteria, hid their guns in some tall grass near the bank, and attempted to leave the area on foot, at which point they were arrested.

When questioned separately, all three confessed to the same plan. They were charged with violating the Hobbs Act, by attempting to interfere with commerce by robbery. 18 U.S.C. § 1951.[1] Ramírez and the others later pled innocent and tried to retract their post arrest statements as involuntary. But on the morning of the second day of trial, before calling the jury, the judge ruled that the statements were voluntary and, thus, admissible. Two of the defendants immediately changed their pleas, leaving Ramírez as the only defendant in the trial. Ramírez moved for a new trial before a new jury. The judge denied the motion, then called the jury in and cautioned them to consider the evidence against Ramírez, alone. After three days of testimony, the jury found Ramírez guilty, for which he was sentenced to 12 years imprisonment.

On appeal, Ramírez challenges the sufficiency of the evidence, the judge's refusal to give him a new jury, and the judge's refusal to subpoena the F.B.I. fingerprint expert who examined the guns. We consider each claim in turn.

## I. *Attempt or Mere Preparations?*

Ramírez argues that the government's evidence shows only preparations to rob

the Wells Fargo truck, and not an attempt to commit robbery in violation of the Hobbs Act. He did not attempt the heist because he knew he would be caught. In his view, an attempt to rob a Wells Fargo truck requires something more than planning the robbery and then arriving armed in a stolen getaway car.

■ We discussed the requirements of attempt in *United States v. Rivera Sola,* 713 F.2d 866 (1st Cir.1983) as follows:

When considering an attempt case, the federal courts have rather uniformly adopted the standard found in Section 5.01 of the American Law Institute's Model Penal Code (Proposed Official Draft 1962). This standard provides that the requisite elements of attempt are (1) *an intent to engage in criminal conduct; and (2) conduct constituting a "substantial step" towards the commission of the substantive offense which strongly corroborates the defendant's criminal intent.*

*Id.* at 869 (emphasis added). The government's evidence supports both requirements of the Model Penal Code standard. Ramírez admitted an intent to rob the truck. And the group's conduct, in casing the bank, stealing a car, and arriving armed at the bank shortly before the Wells Fargo truck was to arrive, constituted a "substantial step" toward the robbery that demonstrated that this intent was no idle whim. *See United States v. Stallworth,* 543 F.2d 1038, 1041 (2d Cir.1976) ("'[a]ll that stood between appellants and success [in a bank robbery] was a group of F.B.I. agents and police officers").

■ Appellant also objects to the jury instruction on attempt and to certain evidence of the attempt, namely the testimony of an F.B.I. agent and the admission of the agent's transcription of Ramírez' post arrest statement (the form 302). These objections are without merit. The jury instruction is almost exactly what Ramírez

---

1. 18 U.S.C. § 1951 provides, in relevant part:

§ 1951. Interference with commerce by threats or violence

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, ... shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

requested and a correct statement of the law in any case. *See United States v. Rivera Solá, supra.* Appellant's objection to the agent's testimony is an undisguised attack on his credibility; that credibility was for the jury to determine. Appellant attempted to impeach the agent by making an issue of the difference between the form 302 and the agent's testimony at trial. Defense counsel cross examined the agent at great length and went into considerable detail regarding the contents of the form 302. On redirect the government introduced the form to rehabilitate the witness. A trial judge has great discretion in permitting rehabilitation evidence after impeachment. *See 3 Weinstein's Evidence* ¶ 607[08] at 607–92 (1985). The form 302 did not contain any new information; admitting it simply allowed the jury to judge for themselves the significance of the alleged discrepancies. That evidentiary ruling was not an abuse of discretion.

## II. *Prejudice from the Change of Plea*

Ramírez argues that the absence of the two other defendants after they changed their plea could only have led the jury to believe that the two defendants had pled guilty. Ramírez further argues that this presumed guilt would prejudice the jury against Ramírez, since the evidence showed all three were in the same venture. The district court recognized this danger of prejudice and instructed the jury as follows:

> This case has been disposed of as to the two defendants who accompanied the remaining defendant when we started the trial. The other two defendants, the ones that are not here today, are of no concern to you and you should not speculate as to the reason why they are not here. This disposition should not control or influence your verdict with reference to the remaining defendant, Julio del Carmen Ramírez, and you must base your verdict as to him solely on the evidence against him.

The court also instructed the jury to the same effect at the conclusion of the trial.

The use of this instruction in this type of situation was approved by the Second Circuit in *United States v. Gibbons*, 602 F.2d 1044, 1048 (2d Cir.1979). *See also United States v. Beasley*, 519 F.2d 233, 239 (5th Cir.1975) (suggesting such an instruction would be appropriate). Other courts have gone even further and permitted the trial judge to inform the jury that the missing defendants changed their plea to guilty, where a cautionary instruction similar to the one above was given. *See United States v. Earley*, 482 F.2d 53, 58 (10th Cir.1973); *United States v. Jones*, 425 F.2d 1048, 1053 (9th Cir.), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970).

Although the existence of some prejudice from the absence of the two other defendants is undeniable, that prejudice is inherent in a trial involving a joint venture. If the two other defendants had pled guilty prior to the trial, they could well have been compelled to testify, as part of a plea agreement, to their involvement, leaving the jury with even stronger doubts than those created by the empty chairs. The possibility of guilt by association cannot be eliminated from joint venture cases, even when all defendants proceed to trial. The most a trial judge can do is clearly and carefully instruct the jury to consider the evidence against a particular individual, alone, and to determine guilt or innocence on that basis. The trial judge did just that here. Like the other circuit courts to have considered this issue, *see ante*, we consider the cautionary instruction adequate in the circumstances. The change of plea did not create a mistrial.

## III. *The Subpoena of the F.B.I. Fingerprint Expert*

On the second day of trial, Ramírez requested that the court subpoena the F.B.I. fingerprint expert who examined the weapons found near the bank. Ramírez intended to call the expert to testify that Ramírez' fingerprints were not found on any of the weapons, but the expert was currently outside Puerto Rico and unavailable on such short notice. The district court's refusal to continue the trial to wait

**4**

for the fingerprint expert was not error in the circumstances, particularly since the judge informed the jury that Ramírez' fingerprints had not been found on the gun. Ramírez had obtained the fingerprint analysis report 51 days prior to trial. He could have, and should have, requested to subpoena the expert in a timely fashion. *See United States v. Wilks*, 629 F.2d 669, 673 (10th Cir.1980) (no error to refuse to continue a trial when a defendant makes an untimely request to subpoena an unavailable witness).

The conviction is *affirmed*.