19 F.3d 22
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Jay A. KORICH, Defendant/Appellant.
 No. 93-1958.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 15, 1993.
Decided Feb. 22, 1994.
 
 Before CUDAHY, FLAUM and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Jay A. Korich was convicted by a jury of attempted bank robbery in violation of 18 U.S.C. Sec. 2113(a). He was sentenced to forty-six months in prison followed by three years of supervised release. On appeal, Korich argues that the evidence was insufficient to show that he took a substantial step toward committing bank robbery. He also challenges the district court's enhancement of his base offense level for obstruction of justice.
 
 I. Background
 
 2
 On March 13, 1992 at approximately 1:00 p.m., Korich called his friend, Douglas Brady, to request a ride to Whitehall, Wisconsin. Korich was carrying three nylon bags when Brady picked him up. En route to Whitehall, Korich asked to stop at a Wal-Mart store where he purchased a long scarf and a pair of black racing style gloves. He told Brady that he wanted to play a joke in Whitehall and showed Brady a rubber pullover mask with long black hair. Korich also asked Brady to stop in Blair, Wisconsin, where he made a telephone call to see if the John O. Melby Bank in Whitehall was open. He then told Brady that he was going to rob the Melby Bank to get even with the Whitehall authorities for convicting him of a drug crime. He asked Brady to park the car behind the IGA store near the bank and wait for him. In return for Brady's assistance, Korich promised to pay the $800 debt Brady owed Korich's brother. Brady agreed.
 
 
 3
 Korich put on the mask when they were approximately one mile from Whitehall. He showed Brady a small bag that appeared to be a shaving kit and asked Brady whether it looked like a bomb. He also showed Brady a police radio, stating that he was going to scan police calls during the robbery. Brady dropped Korich off one and a half blocks away from the bank. Korich told Brady that it would take approximately fifteen minutes because he wanted not only the money in the teller drawers but also the money in the safe. Korich then walked toward the bank, wearing the mask and carrying one of the nylon bags that Brady had seen earlier. According to Brady, the shaving kit and the police radio were in the nylon bag. It is unclear whether Korich was wearing the scarf and the pair of gloves.
 
 
 4
 Three bank employees and one customer were in the bank when Korich entered the lobby. None of the employees was at a teller station: one was at the receptionist desk, another at a work counter three or four feet behind the teller stations, and the third was next to a teller station, speaking on the telephone. Korich went into the office immediately to his left. The office belonged to the bank's vice president, Kurt Johnson, who was Brady's former classmate. A bank employee testified that she was wondering what Korich was doing.
 
 
 5
 After Korich came out of the office, he looked toward the five empty teller stations, hesitated for a few seconds, shook his head, and then walked out. As Korich was leaving, one of the bank employees walked toward the teller stations to activate the photo system because another employee, who was behind the receptionist desk, told her that Korich was wearing a mask. Testifying about her reaction to Korich's presence, she stated: "I was surprised, I can't really remember." The employees contacted the bank president after Korich left, but they did not lock the doors nor contact the police at that time. Korich did not communicate with anyone while he was in the bank.
 
 
 6
 Brady testified that he parked the car behind the IGA store as instructed, and within two minutes Korich approached the car no longer wearing the mask. Korich told Brady that the bank was virtually empty and that he did not go up to the teller windows because there was nobody there to permit him to carry out his plan. Later that day Korich told another friend, Kathy Gabriel, that he had tried to rob the Whitehall bank but had left because no one was there.
 
 
 7
 At trial, Korich admitted only that he had walked into the bank wearing a mask. He categorically denied having the intent to rob the bank. He claimed that he told Brady that he was going to play a joke on someone in Whitehall but had no one in mind. Brady then suggested that he play the joke on Kurt Johnson, whose office in the bank was immediately to the left of the lobby from the south entrance. Korich denied telling Brady that he was going to rob the bank. He also denied explaining to both Brady and Gabriel that the reason he did not commit the robbery was that there were no tellers to be robbed. Korich further denied the following: making a phone call from Blair to confirm that the bank was open; telling Brady of his plan to use the police scanner to monitor police activities during the robbery; showing Brady a shaving kit bag and asking him whether it looked like a bomb.
 
 II. Analysis
 A. Sufficiency of Evidence
 
 8
 When reviewing for sufficiency of the evidence, we consider the evidence and accompanying inferences in the light most favorable to the government and will affirm "if after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); United States v. Goines, 988 F.2d 750, 758 (7th Cir.1993). See also United States v. Rose, No. 92-3599, slip op. at 5 (7th Cir. Jan. 3, 1994) ("[t]he view that the prosecution's case must answer all questions and remove all doubts ... of course, is not the law because that would be impossible; the proof need only satisfy reasonable doubt") (emphasis in original and citations omitted). This court will not reweigh the evidence or evaluate the credibility of witnesses. United States v. Dortch, 5 F.3d 1056, 1065 (7th Cir.1993); United States v. Maholias, 985 F.2d 869, 874 (7th Cir.1993).
 
 
 9
 To sustain a conviction for an attempt to commit a crime, the government must prove that the defendant had the requisite culpable intent and took a substantial step toward the commission of the crime. United States v. Rovetuso, 768 F.2d 809, 821 (7th Cir.1985), cert. denied, 474 U.S. 1076 (1986); United States v. Schramm, 715 F.2d 1253, 1254 (7th Cir.1983), cert. denied, 466 U.S. 930 (1984). On appeal, Korich challenges only the sufficiency of the evidence showing that he took a substantial step in furtherance of a bank robbery.
 
 
 10
 To commit a "substantial step," the defendant must engage in "conduct strongly corroborative of the firmness of his criminal intent." Rovetuso, 768 F.2d at 821. He must commit "some appreciable fragment of the crime," and his preparation must be in such progress that the crime "will be consummated unless interrupted by circumstances independent of the will of the attempter." Schramm, 715 F.2d at 1254. Moreover, the defendant's behavior must be of such unequivocal nature, id., that "a reasonable observer viewing it in the context could conclude beyond a reasonable doubt that it was undertaken in accordance with" a criminal design. Rovetuso, 768 F.2d at 821.
 
 
 11
 In this case, the jury reasonably could conclude that Korich's conduct corroborated his criminal intent to rob the bank and constituted a substantial step toward the commission of the offense. Korich arranged for a get-away driver, made sure that the bank was open, had a plan to take not only the money in the teller drawers but also the money in the safe, and estimated the length of time required for him to commit the crime. He walked into the bank masked and carrying a shaving kit bag intended to pass as a bomb and a police radio to scan police calls during the robbery. The jury could conclude that by entering the bank in disguise and equipped with instruments to be used in the robbery, Korich committed "some appreciable fragment of the crime" of bank robbery sufficient to warrant an attempt conviction.
 
 
 12
 Korich relies on United States v. Still, 850 F.2d 607 (9th Cir.1988), cert. denied, 489 U.S. 1060 (1989), in which the defendant was found not to have taken a substantial step in furtherance of bank robbery. In Still, the defendant was arrested in his van with the motor running approximately two hundred feet from the bank. He was wearing a blond wig and had a hoax bomb, a red pouch with a demand note taped to it, a police scanner programmed to the police department, and a notebook containing drafts of the demand note and the radio frequencies of the police department. Still is distinguishable from Korich's case because in finding that no substantial step was taken, the court emphasized that there was no proof of "actual movement toward the bank or actions that are analytically similar to such movement." Still, 850 F.2d at 610. Unlike the defendant in Still, Korich made actual movements toward the bank and entered the bank. Thus, the jury could conclude that Korich had taken a substantial step toward the commission of bank robbery. See United States v. Moore, 921 F.2d 207 (9th Cir.1990) (evidence that, when apprehended, defendant was walking toward a bank, wearing a ski mask and carrying gloves, pillow cases, and concealed loaded gun supported finding of "substantial step" in furtherance of bank robbery).
 
 
 13
 Although Korich did not walk up to the teller stations nor approach any of the employees to demand money, it is not required that the last act necessary for a bank robbery be committed before Korich can be convicted of attempt. Rovetuso, 768 F.2d at 821 (defining "substantial step" as "something more than mere preparation, yet maybe less than the last act necessary before the actual commission of the substantive crime.") In fact, courts have upheld attempt convictions in situations that are more removed from the actual commission of bank robbery than Korich's case. See, e.g., United States v. Crawford, 837 F.2d 339 (8th Cir.1988) (per curiam) (defendant's conduct was "substantial step" when he was arrested in a car that he had planned to use to drive to the bank and had with him ski masks, overalls and gloves to be used in the robbery); United States v. Prichard, 781 F.2d 179 (10th Cir.1986) ("substantial step" found where defendant spent two weeks observing the bank, prepared a sketch, assembled instruments to be used in the robbery but was arrested the night before the planned robbery while surveying bank manager's house); Schramm, 715 F.2d at 1255-1256 (conviction of attempted bank robbery affirmed where defendant manufactured a bomb, recruited a helper to rent a hotel room as "getaway," dropped the helper off at the hotel with suitcases containing masks, other apparel, and the bomb to be used in the robbery, planned to rob the bank after visiting his parole officer, but was arrested prematurely while in the parole office).
 
 
 14
 It is true that Korich walked out of the bank voluntarily in contrast to many attempted bank robbery situations where the criminal endeavor was thwarted by police intervention, a situation independent of the attempter's will. See, e.g., United States v. Carmen Ramirez, 823 F.2d 1, 2 (1st Cir.1987) ("substantial step" found where defendants arrived armed at the bank in a stolen car but changed their plans when they learned that the police were waiting for them); United States v. Johnson, 962 F.2d 1308 (8th Cir.1992) (same result under similar facts); see also United States v. McFadden, 739 F.2d 149 (4th Cir.), cert. denied, 469 U.S. 920 (1984); United States v. Stallworth, 543 F.2d 1038, 1041 (2d Cir.1976). However, given Korich's statements to Brady and Gabriel that he left the bank because there were no tellers there for him to carry out his plan, the jury could conclude that the crime would have been consummated but for the absence of tellers at the windows. That is, the jury could find that Korich's plan to rob the bank was frustrated by circumstances independent of his will to rob the bank. See United States v. Chapdelaine, 989 F.2d 28, 33 (1st Cir.1993) (en banc) (evidence of defendants' preparation, frustrated only by accidental change in armored truck's schedule, was sufficient to sustain attempted bank robbery conviction, even though defendants did not leave their vehicles or make a move toward the bank). Rumfelt v. United States, 445 F.2d 134 (7th Cir.) (attempt established where defendant wore a mask and used a rifle to intimidate a passerby to open the bank door but was unsuccessful because the door was locked), cert. denied, 404 U.S. 853 (1971).
 
 
 15
 Korich argues that no "substantial step" was taken because he had no weapons or demand notes with him and made no threats or threatening gestures, and because the bank employees perceived no danger from his conduct. Korich's plans might not have been as sophisticated as other attempted bank robberies. Nevertheless, he had a shaving kit bag which he intended to pass off as a bomb, and although he had no demand notes, the jury reasonably could find that Korich would have verbally demanded the money had there been tellers at the windows. Moreover, although a witness' perception of danger from the defendant's conduct could be a factor in determining whether the defendant has crossed the line between preparation and attempt, see Schramm, 715 F.2d at 1254 (citing Francis Bowes Sayre, Criminal Attempts, 41 Harv.L.Rev. 821, 843-37 (1929)), it is not determinative. In any event, Korich's reliance on two bank employees' testimony--one stating that she was wondering what Korich was doing, and the other stating that she was surprised--does not establish that the employees perceived no danger. The same bank employees also testified that they activated the photo system because Korich was observed wearing a mask. They also contacted the bank president after Korich left. Thus, the jury could find that the bank employees were alarmed. Because a reasonable juror, when viewing Korich's behavior in context, could conclude that a robbery was attempted, we believe that there was sufficient evidence to support the conviction.
 
 B. Obstruction of Justice
 
 16
 Korich also challenges his sentence, arguing that the district court erred in enhancing his base offense level for obstruction of justice. We review the district court's finding of obstruction of justice for clear error, United States v. Price, 988 F.2d 712, 721 (7th Cir.1993), and its interpretation of the guidelines de novo. United States v. Lozoya-Morales, 931 F.2d 1216, 1218 (7th Cir.1991).
 
 
 17
 The sentencing guidelines provide that a defendant's offense level may be increased if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. Sec. 3C1.1. An example is the commission of perjury, U.S.S.G. Sec. 3C1.1 Application Note 3(b), defined as giving "false testimony concerning a material matter with a willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory" while testifying under oath. United States v. Dunnigan, 113 S.Ct. 1111, 1116 (1993). Under the Supreme Court's standard, an enhancement for perjury is warranted if the district court's determination "encompasses all of the factual predicates for a finding of perjury." Id. at 1117.
 
 
 18
 Korich argues that the district court misinterpreted the application note to Sec. 3C1.1, which provides that the section "is not intended to punish a defendant for the exercise of a constitutional right" and that "a defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury)" is not a basis for application of Sec. 3C1.1. U.S.S.G. 3C1.1 Application Note 1. Because he allegedly denied only his criminal intent to rob the bank but not his actions, Korich argues that he should not have received an obstruction enhancement. He contends that if a sentencing court is free to impose an obstruction enhancement upon a denial of intent, it would chill a defendant's right to testify.
 
 
 19
 Korich denied guilt while testifying at the trial, and his statements were found perjurious by the sentencing court. Thus, as the application note provides, a denial of guilt under oath that constitutes perjury warrants the application of Sec. 3C1.1. Moreover, as the Supreme Court makes clear in Dunnigan, 113 S.Ct. at 1117, a defendant's right to testify in his own behalf is not a license to commit perjury and thus, an enhancement under Sec. 3C1.1 for committing perjury does not chill the exercise of a constitutional right. See also United States v. Easley, 977 F.2d 283, 287 (7th Cir.1992).
 
 
 20
 We also find that the district court's finding of perjury sufficiently encompassed all of the factual predicates as required by Dunnigan. At sentencing, the district court stated that Korich's "story about why he went to the bank was preposterous" and clearly not true. The district court also found that Korich had testified falsely about what he said to Brady and Gabriel because it seemed "unlikely that both of them [Brady and Gabriel] would have lied about the same thing." The district court concluded that Korich lied to "divert the jury from determining that he had gone in with the intent to commit a robbery." See, e.g., United States v. Carson, 9 F.3d 576, 584 (7th Cir.1993); United States v. Emenogha, 1 F.3d 473, 482 (7th Cir.1993); United States v. Rodriguez, 995 F.2d 776, 779 (7th Cir.1993) (district court's determination encompassed the factual predicates required by Dunnigan where the district court found that defendant's false denials went to the very heart of the case and his version of the facts "do not square with reality"); United States v. Dominguez, 992 F.2d 678, 685 (7th Cir.), cert. denied, 114 S.Ct. 250 (1993). Finally, because there is ample support for the district court's finding of perjury, we cannot say that the district court has committed clear error.
 
 III. Conclusion
 
 21
 Accordingly, we affirm Korich's conviction and sentence.