UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward Frank SNELL,
Defendant-Appellant.

No. 79–1806.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1980.

Decided Sept. 8, 1980.

Paul H. Alvarado, Alvarado & Spain, San Francisco, Cal., for defendant-appellant.

Robert D. Ward, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before ANDERSON and TANG, Circuit Judges, and MURRAY,* District Judge.

PER CURIAM:

This is the third appeal involving the prosecution of Edward Snell for his participation in an aborted kidnap and robbery scheme. In the first appeal, *United States v. Snell*, 550 F.2d 515 (9th Cir. 1977), the court affirmed Snell's conviction for conspiracy to rob a federally insured bank, but reversed his conviction for attempted obstruction of commerce in violation of the Hobbs Act, 18 U.S.C. § 1951, on the ground that the conduct charged was within the exclusive coverage of 18 U.S.C. § 2113.[1] A new indictment was returned charging him with attempted robbery of a federally insured bank. Snell's pretrial appeal of his motion to dismiss the new indictment on double jeopardy grounds was rejected in *United States v. Snell*, 592 F.2d 1083 (9th Cir.), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). After a bench trial on the record of the former jury trial, Snell was found guilty of the new charge and appeals.

The facts of this case are recounted in the first Snell opinion, 550 F.2d at 517. They show that Snell and two ·co-conspirators planned to kidnap a bank manager and his wife, hold the wife hostage while accompanying the manager to the bank to obtain

$150,000, and then kill the manager. Pursuant to that plan the three went to the manager's home and then to the bank where, from the parking lot, they observed the manager and identified his car. The other two co-conspirators also waited near the manager's house in the evening to observe him returning home.

After observing the manager's routine at his home and office, the three assembled false identifications, rubber gloves, hand guns, mace, ropes, and adhesive tape and went to the bank manager's house to carry out their plan. Spotting a Highway Patrol vehicle near the house, they postponed execution of the plan. The following day they returned to the house, again armed. Snell and one co-conspirator carried false police identification. They knocked on the door and identified themselves as policemen, but their plan to force an entry and kidnap the wife was frustrated by a Great Dane that accompanied her to the door. When one of the co-conspirators was picked up on unrelated charges and revealed the plan to the police, Snell and the third co-conspirator were arrested.

On appeal, Snell contends that (1) the evidence shows that he was engaged in preparation rather than an attempt; (2) his retrial for attempted robbery after the Government had obtained a conviction for another offense arising out of the same transaction violated his fifth amendment right against double jeopardy; and (3) that the new indictment was defective in form. We find no error and affirm.

I.

A conviction for attempt requires proof of culpable intent and conduct constituting a substantial step toward commission of the crime that strongly corroborates that intent. *United States v. Mandujano*, 499 F.2d 370, 373–79 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d

---

* Honorable William D. Murray, Senior United States District Judge for the District of Montana, sitting by designation.

1. In *United States v. La Binia*, 614 F.2d 1207 (9th Cir. 1980), this court relying on the Su-

preme Court's intervening decision in *United States v. Culbert*, 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978), overruled the holding in *Snell* that led to the reversal of Snell's Hobbs Act conviction.

812 (1975); *see United States v. Bussey*, 507 F.2d 1096 (9th Cir. 1974). The evidence here established the existence of both elements. Snell's intent was demonstrated by the plan that he devised with his co-conspirators. His intent was corroborated in a number of ways: assemblage and possession of the materials necessary to commit the crime, reconnoitering the location of the crime and the habits of the victim, and the actions taken to effectuate the plan that were frustrated only by the fortuity of a police car on one occasion and the presence of a Great Dane at the intended victim's house on another. Despite Snell's contrary assertion, this case is not meaningfully distinguishable from the factual circumstances in *Bussey*.

Snell argues that his conduct may constitute attempted kidnapping, but not attempted robbery. Given the nature of his scheme that made the kidnapping an integral part of the plan to rob the bank, Snell's acts taken in furtherance of the kidnapping equally evidenced his intent to rob the bank. In this respect, Snell's entry into the home of the bank manager's wife is factually precedent but so far as the total scheme is concerned is analytically little different than entry into the bank itself.

## II.

■ Snell next contends that retrial on the attempted robbery charge violates double jeopardy. This identical argument was rejected, prior to Snell's retrial, by a panel of this court in *United States v. Snell*, 592 F.2d 1083 (9th Cir.), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979). The court reasoned that the successive prosecution was not barred by double jeopardy because, under the Supreme Court's formula in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), attempted robbery required proof of facts different than the crimes of conspiracy to commit robbery and attempted extortion, even though all the offenses arose out of the same transaction. We find no compelling reason to alter the result reached by the first panel, and reject Snell's latest formulation of his double jeopardy argument.

The facts required to prove conspiracy and attempted extortion are plainly different from the facts necessary to commit attempted robbery. Snell argues that, although successive prosecution for different offenses may be justifiable when no conviction is obtained on the first, once a conviction has been obtained, any further prosecution for crime arising out of the same transaction amounts to harassment. The prior panel reasonably concluded, however, that due process and the Department of Justice policy already protect defendants from multiple prosecutions. There is no evidence here that the second prosecution constituted harassment. *Id.* at 1086–88.

## III.

■ Finally, Snell contends that the indictment charging him with attempted bank robbery was invalid.

The new indictment that was returned after his attempted extortion conviction was reversed was labelled a "superceding" indictment. Snell argues that a superceding indictment, like an amended information under Fed.R.Crim.P. 7(e), can be returned before a trial on the merits, but may not be returned after a final judgment, i.e., the reversal of his first conviction.

We reject this hypertechnical argument. Although labeled "superceding", the indictment returned against Snell was in effect a new indictment, not an amended one. Snell presents no authority to suggest that superceding indictments are limited to describing amended indictments, and in fact the word superceding is used to describe serial indictments in a variety of contexts. *See, e.g., United States v. Kelava,* 610 F.2d 479, 480, 482 (7th Cir. 1979); *United States v. Ledee,* 549 F.2d 990, 993 (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977). Even if the inclusion of the word superceding was a technical defect, Snell does not show he was prejudiced.

The judgment of the district court is affirmed.