**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William BUFFINGTON, Ceariaco Cabrellis, and Booker T. Cook, Defendants-Appellants.**

**Nos. 83–1309, 83–1310 and 83–1319.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1984.

Decided April 28, 1987.

As Amended on Denial of Rehearing July 6, 1987.

David P. Druiliner, Sacramento, Cal., for plaintiff-appellee.

Daniel M. Davis, and Robert M. Holley, Sacramento, Cal., and Peter H. Smurr, Carmichael, Cal., for defendants-appellants.

Before WRIGHT, POOLE and WIGGINS, Circuit Judges.

POOLE, Circuit Judge:

Appellants William Buffington, Ceariaco Cabrellis and Booker T. Cook appeal their convictions of conspiracy to commit bank robbery, attempted bank robbery, use of a firearm in commission of a federal felony and being felons in possession of a firearm. They raise a series of objections to pretrial proceedings as well as events at trial. For reasons set forth below, we affirm in part and reverse in part.

## FACTS

An informant told the Sacramento Police Department that appellants Buffington, Ceariaco Cabrellis, and Jimmy Cabrellis planned to rob a bank[1] in the shopping center at Florin Road and Franklin Boulevard, and that appellant Cabrellis would be dressed as a woman. On December 17, 1982, a police officer observed two vehicles driving slowly around the Farmers Bank. He believed one of the drivers to be appellant Cabrellis, to whom one of the vehicles was determined in fact to be registered. Five days later on December 22, about 4:20 p.m., two men, later identified as Buffington and Cook, and a third person appearing to be a woman, later identified as appellant Cabrellis, driving a white Pontiac, entered the shopping center.

The Pontiac proceeded down one aisle of parking and slowly went past Bay View Federal Savings, toward which the occupants of the vehicle seemed to be looking. They then drove out of the parking area, onto an adjacent street behind the bank. After a U–turn, the car slowly returned down another aisle of parking past the bank, and the occupants again looked toward Bay View Federal. The driver, Buffington, parked the vehicle about one hundred fifty feet from a Payless Store, which was about the same distance from the

bank. Buffington left the car, entered Payless, and walked to a window which overlooked Bay View Federal. He did not purchase, inspect goods, or shop, but after three minutes, walked over and stood in a cashier line.

About two minutes after Buffington left the vehicle, Cook also emerged and stood by the car door. He wore a large peacoat, a hat, and a long scarf. The government concedes that the Sacramento weather on that December day was "inclement." The person dressed in women's clothes, Cabrellis, also exited the car and stood by the door. Both persons were facing Bay View.

By sheer coincidence, a major power outage then occurred affecting the shopping center area. Shortly afterwards, Margaret Morningstar, a Bay View Federal teller, walked to the front door of the bank and locked the door, at which time she noticed Cook wrapping the scarf over his face so that only his glasses showed. She mentioned to a security guard that the man would be unable to rob the bank because she had just locked the door. Buffington, meanwhile, returned to the car, which he, Cabrellis and Cook reentered. Buffington drove out of the parking area, passing Police Officer Torres, who identified the female as Cabrellis from a photograph. Police officers then stopped the vehicle, ordered the appellants to exit the car at gunpoint, and forced them to lie face down on the pavement. Police found a revolver on Cook's person and a revolver on the left rear floorboard of the vehicle. Appellants were then arrested. Officers later discovered that Cook was wearing four to five coats or jackets.

Appellants were subsequently indicted by a United States grand jury on four counts. Count I of the indictment charged them with conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371. Count II charged attempted unarmed bank robbery, 18 U.S.C. § 2113(a).[2] Count III

---

1. Two institutions are located in the shopping center: The Bay View Federal Savings and Loan Association (Bay View) and the Farmers and Merchants Bank (Farmers Bank), a state bank.

2. 18 U.S.C. § 2113(a) provides, in relevant part:

Whoever, by force and violence, or by intimidation, takes or attempts to take * * * any property or money * * * belonging to * * * any bank, credit union, or any savings and loan association; or

charged them with use of a firearm in the commission of a federal felony in violation of 18 U.S.C. § 924(c)(2),[3] and Count IV charged them with being felons in possession of a firearm under 18 U.S.C. App. § 1202(a)(1).[4]

Prior to trial, appellants filed a motion to obtain the statements of the informant for use during a hearing brought to suppress evidence seized during the stop of their vehicle at the shopping center. On March 23, 1983, the district court ordered the government to provide appellants with police reports and other documents relating to the suppression issue pursuant to 18 U.S.C. § 3504. The government only partially complied with the order and declined to produce the informant's statements. The court then granted appellants' motion to suppress. The government appealed this ruling, but later voluntarily dismissed its appeal, on the theory that it could make its case without reliance on this informant's information.

Over objection by appellants the district court denied appellants' motion to bar rehearing, and then on August 11, 1983, denied the motion to suppress. The court stated that its ruling was made without considering any information supplied by the informant; even in the absence of such information the court found sufficient cause for appellants' arrest and the subsequent seizure of evidence.

After a jury trial, appellants were found guilty of all four charges. They were sentenced as follows: Each defendant was sentenced to 5 years imprisonment on Count I (conspiracy to commit bank robbery); Cabrellis and Cook were each sentenced to 20 years imprisonment on Count II (attempted armed bank robbery), the sentences to run consecutively to that imposed under Count 1; Buffington was sentenced to serve 15 years imprisonment on Count II, also running consecutively to his sentence on Count I. Each defendant was sentenced to serve 2 years imprisonment on Count IV, the sentences to run concurrently with those imposed under Counts I and II. On Count III the sentence as to each defendant was suspended and each was placed on 5 years probation, the probation to commence upon each defendant's release from custody under the sentences imposed in Counts I, II and IV.

On appeal, appellants challenge the district court's order granting reconsideration of the suppression motion, and the order which denied suppression without requiring the disclosure of information supplied by the informant. They argue that evidence seized from their vehicle should have been suppressed because the stop constituted an arrest without probable cause, which was not justified under *Terry v. Ohio*. They claim that the evidence was insufficient to support their convictions for attempted bank robbery and conspiracy to commit bank robbery. Appellant Cook has specified as error a variety of matters concerning proceedings before and during trial which will be treated later in this disposition.

I. *Motion to Suppress*

 A. *Propriety of the August Reconsideration*

■ On August 11, 1983, at the insistence of the United States Attorney, the

---

Whoever enters or attempts to enter any [such institution] * * * with intent to commit * * * any felony affecting such [institutions] * * * and in violation of any statute of the United States, or any larceny—
Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both. *See* subsections (b) and (g).

**3.** 18 U.S.C. § 924(c) reads in pertinent part:
Whoever—
 (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States,

shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years.

**4.** According to 18 U.S.C. App. § 1202(a)(1),
Any person who—
 (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony * * *
and who * * * possesses * * * any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

district judge reconsidered the motion to suppress which he had granted on March 28, and on this occasion denied appellants' motion. Appellants now argue that it was error to change the ruling since the government had not presented new evidence or additional facts which would justify reversing the prior decision. They suggest that once such an order had been entered, reopening it impermissibly gave the prosecution a "second bite" and a chance to do later what it ought to have done earlier, since the government had voluntarily abandoned its appeal because it appeared that the original requirement of disclosure was correct. We disagree because our examination of the record leads us to conclude that the proceedings of March 23 and 28 did not constitute a plenary suppression hearing and that at all times the court understood and acquiesced in the government's effort to obtain interlocutory review of the original suppression order.

In the course of these proceedings, defendants sought discovery as to the identity of the informant and the nature of his communications to the authorities. They based their demand on the provisions of 18 U.S.C. § 3504[5] which they argued gave them the right to inquire into the prosecution's sources of information. The district court ruled that the statutory language of 18 U.S.C. § 3504 left unclear whether Congress had intended that enactment to create an exception to the rule of limited discovery in criminal cases under the Jencks Act, 18 U.S.C. § 3500, and Rule 16 of the Federal Rules of Criminal Procedure. The government opposed this construction of the law, and asked time to decide whether to comply or to seek appellate review of such a ruling. The court then continued the case to March 28, at which time the government was to state whether in fact it would produce the information because, if it did not, the court would grant suppression and probably would dismiss the indictment, since the evidence needed to support the charges would have been disallowed.

On the scheduled date, the prosecutor stated that the government had decided not to yield the documents and information. He recognized that the court would thereupon grant suppression, but he urged that any order merely suppress without prejudice so that review under 18 U.S.C. § 3731 could be pursued. He assured the court that if the appellate court sustained the order to produce, the prosecution would comply on remand. He further suggested the possibility that the case could be presented at the suppression stage without relying upon any of the informer's information and could be confined solely to the observations of the police and agents. So that there would be minimal prejudice caused by the delay during appeal, the prosecutor stipulated that appellant Cabrellis, the only defendant then in custody, could be released on his own recognizance.

> The district judge then announced that based upon [the prosecutor's] statements to the court that there may be yet other evidence * * *, I would not dismiss this case with prejudice, nor would I dismiss it without prejudice; I would merely enter an order of suppression, the Government to take its interlocutory appeal * *
>
> * * * * * *
>
> So I want no misunderstanding that this case is terminated. It is merely put in a state of limbo. It is stayed pending interlocutory appeal by the Government under [18 U.S.C. section] 3731.

(Reporter's Transcript 75–76).

The government thereafter filed an interlocutory appeal but entered a voluntary dismissal because it learned (perhaps from the Solicitor General) that an intervening statutory change would support the trial court's ruling. Although the defendants

---

5. According to 18 U.S.C. § 3504,
 (a) In any trial, hearing, or other proceeding in or before any court * * *
 (2) disclosure of information for a determination if evidence is inadmissible because it is the primary product of an unlawful act * * * shall not be required unless such information may be relevant to a pending claim of such inadmissibility * * * *
 The definition of an act includes:
 any act * * * in violation of the Constitution or laws of the United States * * * * 18 U.S.C. § 3504(b).

strenuously objected, the district court permitted the government to defend against the suppression motion by testimony purportedly untainted by connection with the informant's information. During that August hearing the court reaffirmed that it had granted the motion in March in order to put the case in a posture from which an appeal could be taken and a definitive review obtained. He said:

> There was not an adjudication on the merits. The procedure parameters of the motion and the hearing were only set so it would be right for adjudication by the Ninth Circuit. It was never my intention, certainly, to preclude the Government from ever coming back and saying fine we got beat fair and square. Here's the discovery. Now let's litigate for the first time the issue of probable cause. If that was your impression, I'm sorry, but that certainly was not my impression.

(RT at 92). He then granted rehearing of the suppression ruling.

### B. *The Motion to Reconsider the Suppression Ruling*

Even if the March hearing is characterized as a suppression hearing, reversal is unwarranted. This court has previously approved the propriety, for reasons of judicial economy, of a district judge's reconsideration of a suppression order. *United States v. Jones*, 608 F.2d 386, 389–90 (9th Cir.1979). In *Jones*, unlike the present case, the government's motion to reconsider took place during the thirty day appeal period set forth in 18 U.S.C. § 3731 and therefore did not involve an appeal. *Id.* But we do not believe the taking of an appeal alters the situation, for we have also held that reconsideration of a suppression order is permissible even at trial "if the record reveals matters which indicate that the evidence was lawfully obtained." *United States v. Rabb*, 752 F.2d 1320, 1323 (9th Cir.1984), *cert. denied*, 471 U.S. 1019, 105 S.Ct. 2027, 85 L.Ed.2d 308 (1985). We rejected the view espoused in *McRae v. United States*, 420 F.2d 1283, 1288 (D.C. Cir.1969), that the government should be barred from showing that evidence ought

to be admitted at trial even if it did not do so during a previous suppression hearing, if, in the court's sound discretion, justice will be served.

 The decision to reconsider a suppression order at trial is reviewed for abuse of discretion. *Rabb*, 752 F.2d at 1323. Under the conditions noted by the court here it was not an abuse of discretion for the district judge to reconsider whether the evidence from the automobile stop had been lawfully obtained. Appellants present no showing that the procedure followed by the district court prejudiced them. No witnesses disappeared between March and August; Cabrellis, the sole defendant in custody, was released on his own recognizance during the delay caused by the interlocutory appeal. Nor is there any indication that the government acted merely to delay these proceedings. Therefore, we find no abuse of discretion in going forward with the suppression hearing.

### C. *Failure to Disclose Informant Materials at the Suppression Hearing*

At the August hearing, defense counsel objected to the admission of any information derived from the government informant other than the fact that police officers were present at the shopping center due to the informant's tip. The court denied the suppression motion, stating that it would not rely upon any informant information in reaching its decision. Rather, while acknowledging that the informant's tip led to the presence of the officers at the shopping center, the court said it based the finding of reasonable suspicion solely on the observations of the officers at the scene.

 Appellants' argument that the suppression motion could not be resisted without information from the informant presents a close question but we believe the trial court's resolution of the difficult problem was proper. The process due at a suppression hearing may be less elaborate than the protections due the defendant at the trial itself. *United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65

L.Ed.2d 424 (1980). Thus, the Due Process Clause does not always require the disclosure of an informant's identity at a suppression hearing. *Id.; McCray v. Illinois,* 386 U.S. 300, 311–13, 87 S.Ct. 1056, 1062–64, 18 L.Ed.2d 62 (1967). Appellants' reliance upon 18 U.S.C. § 3504, as interpreted in *United States v. Salsedo,* 477 F.Supp. 1235 (E.D.Cal.1979), *vacated and remanded,* 622 F.2d 465 (9th Cir.1980), is therefore misplaced.[6]

The case is considerably less clear when we consider the problem of evidence at trial, where the court again refused to compel disclosure of the informant's identity and the content of his communication. Such a ruling also is reviewable under the abuse of discretion standard. *United States v. Whitney,* 633 F.2d 902, 911 (9th Cir.1980), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981); *United States v. Marshall,* 526 F.2d 1349, 1359 (9th Cir.), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976). *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), holds that a court should balance the public interest in protecting the flow of information concerning the commission of crimes against an individual's right to prepare his or her defense, ordering disclosure where it would be relevant and helpful to the defense of the accused and essential to the fair determination of the case. *Id.* at 60–62, 77 S.Ct. at 627–29.

*Roviaro* has been extended to requests for the underlying circumstances concerning information provided by an informant. *United States v. Anderson,* 509 F.2d 724, 728 (9th Cir.1974), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). The burden of proof is on the defendant to show need for the disclosure,

*United States v. Marshall,* 532 F.2d 1279, 1282 (9th Cir.1976). The mere suspicion that information will prove helpful is insufficient to require disclosure. *United States v. Trejo-Zambrano,* 582 F.2d 460, 466 (9th Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978).

The district court's refusal to order disclosure at trial is troubling. It is seriously in doubt that crucial testimony of the agents was free of the influence of the informant's revelations. Whether there was a pre-existing conspiracy to rob a federal bank; and what interpretations could rationally and honestly be made without the help of the undisclosed communications, were inextricably involved in the trial jury's receipt of this testimony. Indeed, the evidence remains unfocused and inconclusive unless the informant's contributions are used as a nexus. But none of his story was supposed to be considered. The court's ruling on admissibility presupposed that the surveilling officers could justify their acts solely by reason of the events they witnessed, unaided by the glue of the unnamed informant's tips. The fact is that appellants' conduct—before they were stopped and then arrested—was all highly ambiguous. On the other hand, advance information that they planned to rob some bank at the shopping center could change ambiguity into sinister acts of great significance.

It is our view that the government's evidence, without the aid and interpretive light of the informant's disclosures, was insufficient as a matter of law to justify the convictions for conspiracy to commit federal bank robbery, attempted federal bank robbery, and the use of firearms in the commission of such federal offenses. Nothing in the record independently satis-

---

**6.** *Salsedo* held that at a suppression hearing the government was required to deliver to the defendant an agent's notes of a conversation with the defendant, and surveillance logs relating to the issue of probable cause for an automobile stop and seizure. 477 F.Supp. at 1244. The court reasoned that because of the ambiguous definition of unlawful act in § 3504 the statute must be construed in defendant's favor to require disclosure of information relevant to a claim of inadmissibility due to an unlawful act.

Unlike the present case, *Salsedo* did not involve the disclosure of information about a confidential informant.

At the first suppression hearing in this case, the district judge followed *Salsedo,* reasoning that since an automobile stop in violation of the Fourth Amendment could constitute an unlawful act under § 3504, disclosure to the defendant of information about the stop, including informant materials, would be required.

fies the minimal elements of the charges in Counts I, II and III. We therefore find it unnecessary to rest our decision on the narrow ground that the court should have compelled disclosure, at least at the trial. It is our conclusion that, except for the charge under 18 U.S.C.App. § 1202(a)(1), there was insufficient evidence to sustain the verdicts.

### D. *The Stop of Appellants' Vehicle*

Appellants characterize the stop and search of December 22, 1982, as an arrest without probable cause, emphasizing that they were forced from their car and made to lie down on wet pavement at gunpoint. They therefore maintain that evidence seized as a result of the stop should have been suppressed. The district court concluded that this was an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), rather than an arrest. We examine this conclusion *de novo, United States v. Maybusher*, 735 F.2d 366, 371 n. 1 (9th Cir.1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985).

■ While police officers must have founded suspicion of criminal activity to conduct an investigatory stop, *United States v. Bautista*, 684 F.2d 1286, 1288 (9th Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983), this is a lesser standard than the probable cause needed to make an arrest. *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972). As the Supreme Court has recognized, officers conducting investigatory stops may proceed on reasonable suspicion that investigation is called for and may take reasonable measures to neutralize the risk of physical harm and to determine whether the person in question is armed. *Terry v. Ohio*, 392 U.S. at 24, 88 S.Ct. at 1881 (1968). The use of force during a stop does not convert the stop into an arrest if it occurs under circumstances justifying fears for personal safety. *United States v. Beck*, 598 F.2d 497, 501 (9th Cir.1979). Thus, whether an arrest has occurred depends on the totality of the circumstances, *United States v. Richards*, 500 F.2d 1025, 1028 (9th Cir.

1974), *cert. denied*, 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975).

■ Examining the totality of the circumstances here indicates that the police conducted an investigatory stop rather than an arrest without probable cause. From a photograph, a police officer on December 17 identified the person in the backseat of appellants' vehicle as Cabrellis. Cabrellis was known to have a violent criminal history—he had been charged in the ambush slaying of a police officer and with attempted murder, and he had been imprisoned for either bank robbery or assault with a weapon. On December 22, appellants were twice observed driving slowly in front of the bank and closely observing it from the car. Buffington was seen entering the Payless Store, adjacent to the bank, where he took a position allowing him to examine the front of the bank. Cook and Cabrellis exited the car and stood looking in the direction of the bank. Cook turned up the collar of his coat and had a scarf over his face, although it was a chilly and windy day. These were not necessarily incriminating circumstances, but we believe the officers had before them sufficiently unusual conduct to warrant their conducting an investigatory stop.

Appellants assert that the manner of the stop could not be justified absent information supplied by the confidential informant. But, as distinguished from what evidence of any substantive violations could properly be meaningful to a jury without adverting to the information of the tipster, the identification of Cabrellis and his known criminal history was information acquired other than through the informant; the use of clothing disguise and antic movements were done and perceived in the presence of the officers; and a reasonable fear for their personal safety under these circumstances could justify policemen in using the precautions employed in this case.

Our decisions support this conclusion. In *United States v. Jacobs*, 715 F.2d 1343 (9th Cir.1983), this court held that an officer, who learned that a person with a record of a bank robbery was acting suspiciously, was justified in ordering the per-

son to "prone out" during an investigatory vehicle stop. *Id.* at 1345–46. And in *United States v. Taylor*, 716 F.2d 701 (9th Cir.1983), while an officer drew his gun and ordered the defendant, who was seated in a vehicle, to lie face down in a ditch, where he was handcuffed and frisked, the court held that that conduct did not transform the stop into an arrest, stressing that the officers had reason to believe that the defendant should be considered dangerous. *Id.* at 708–09.

Certainly, the information which the police had on that December day was itself not tainted; and since the informant's only connection was that his story had caused the police to make surveillance of the shopping center, we think the testimony at the trial, although sequentially related to the tip, could properly be given and received as the officers' independent observations at the scene. At the suppression hearing the defendants' objections had not included—as they could not—contesting the admissibility of the fact that the police came to the shopping center "based on an informant's information." Once there, they could proceed as sanctioned by *Terry* to look into behavior out of the ordinary. We are satisfied that the officers had sufficiently reasonable cause to conduct an investigatory stop.

If the officers had reasonable suspicion to conduct an investigatory stop of appellants' vehicle, the manner of the stop did not necessarily convert it to an arrest without probable cause. We hold that the district court properly denied the motion to suppress as to Count IV.

Since, therefore, in the course of a lawful *Terry* stop, the police discovered the defendants in possession of firearms; and since it is not contested that each defendant had suffered a prior felony conviction and was prohibited from possession of a firearm by 18 U.S.C.App. § 1202(a)(1), their convictions of that charge should be affirmed.

## II. *Sufficiency of the Evidence*

We must next determine whether the evidence, exclusive of any reliance upon the communications supplied by the informant, was sufficient to sustain their convictions for the charges of conspiracy to commit federal bank robbery, attempted federal bank robbery, and the use of a firearm in the commission of a federal offense. In reviewing these issues, we inquire whether, viewing the evidence in the light most favorable to prosecution and to the verdicts, *United States v. Hughes*, 626 F.2d 619, 626 (9th Cir.) *cert. denied*, 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 611 (1980), any rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Lester*, 749 F.2d 1288, 1296 (9th Cir.1984).

### A. *Attempt*

A conviction for attempt requires the government to prove (1) culpable intent, and (2) conduct constituting a substantial step toward commission of the crime that is in pursuit of that intent. *United States v. Snell*, 627 F.2d 186, 187 (9th Cir.1980), *cert. denied*, 450 U.S. 957, 101 S.Ct. 1416, 67 L.Ed.2d 382 (1981). A substantial step consists of conduct that is strongly corroborative of the firmness of a defendant's criminal intent. *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975). Mere preparation does not constitute a substantial step. *United States v. Taylor*, 716 F.2d 701, 712 (9th Cir.1983). The issue then is whether the evidence presented at trial was sufficient of itself to prove intent and a substantial step toward bank robbery.

The government contends that appellants' intent to rob Bay View Federal may be inferred from the following circumstantial evidence:

(1) the assemblage and possession of materials necessary to commit the crime—two handguns, female clothing and a makeup disguise for Cabrellis, and a multi-layered clothing disguise for Cook;

(2) the two visits to the location of the crime, Cabrellis' on Dec. 17 and all three appellants' presence on Dec. 22; and

(3) certain actions allegedly taken to effectuate the plan, namely, twice driving slowly by the bank while staring into it, driving to the rear of the bank, Buffington's behavior in the Payless Store, and the fact that Cook and Cabrellis were armed when they exited the vehicle and stood with their attention directed toward the bank.

The above constitutes little more than a summary of the evidence; it does not answer the question whether the rquisite elements of the offense were shown to exist beyond a reasonable doubt. If the prosecution could bring to these bare allegations the light shed by the informant, a reasonable jury could find at least the substantially unequivocal intent to rob someone or some institution. But the government's solemn commitment to avoid that light, and the trial court's ruling that it must be avoided, forbids resolving the ambiguities with that help. Thus unaided, the circumstances fall short of showing the intent to rob a federal bank. If intent to rob existed at all, it could easily have been directed against the Payless market, or the nearby state bank.

Of course, circumstantial evidence is fully admissible in criminal cases, including bank robbery cases. E.g., *United States v. Abraham*, 617 F.2d 187 (9th Cir.), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980). It is permissible to infer intent from a defendant's conduct and the surrounding circumstances. W. LaFave and A. Scott, Jr., *Handbook of Criminal Law*, § 59 n. 80 (1972). For example, in *Rumfelt v. United States*, 445 F.2d 134 (7th Cir.), *cert. denied*, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 94 (1971), the Seventh Circuit sustained a conviction of attempted bank robbery where intent to rob was shown by circumstantial evidence. In *Rumfelt*, the court noted that actual entry into the bank was not required to find that an attempt occurred. *Id.* at 136. The defendant's presence in front of a bank while wearing a ski mask, and his use of a rifle to intimidate a passerby into trying to open the door to the bank for him were sufficient to infer an intent to steal. *Id.* at 137. That is not comparable to this case.

Other cases that have permitted the inference of an intent to rob a bank have involved testimony by informants or co-conspirators. *E.g.*, *United States v. Schramm*, 715 F.2d 1253, 1254 (7th Cir. 1983), *cert. denied*, 466 U.S. 930, 104 S.Ct. 1717, 80 L.Ed.2d 189 (1984) (jury can infer intent from defendant's repeated statements to an informant about his plans to rob a bank); *United States v. Snell*, 627 F.2d 186, 188 (9th Cir.1980), *cert. denied*, 450 U.S. 957, 101 S.Ct. 1416, 67 L.Ed.2d 382 (1981) (intent demonstrated by evidence of a plan to rob a bank, which co-conspirator revealed to the police).

■ Evidence of the defendants' intent here has no such background upon which to rely. There was no admissible testimony concerning defendants' intent by an informant or co-conspirator. No defendant came within 50 yards of the bank. The suggestion that they were "casing" something could be true, but is supported by little more than speculation. The evidence is focused no more on Bay View than on other nearby institutions. Even viewing the evidence in as favorable a light to the government as we may, the evidence presented to the jury could reasonably generate no more than suspicion, and is certainly not sufficient for a rational trier of fact to find intent to commit bank robbery beyond a reasonable doubt.

■ Moreover, even if sufficient intent to rob were shown, the conduct fell short of constituting a substantial step toward the commission of a robbery. For conduct to be "strongly corroborative of the firmness of the defendant's criminal intent,"

> [p]reparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature.

*United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir.1974), *cert. denied*, 419 U.S.

1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975) (quoting *People v. Buffum,* 40 Cal.2d 709, 718, 256 P.2d 317, 321 (1953)). Thus, while conduct need not be incompatible with innocence to be punishable as an attempt, the conduct must be necessary to the consummation of the crime and of such nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute. *United States v. Manley,* 632 F.2d 978, 987–88 (2d Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

Knowing all that we have learned—which the jury did not have before it—we could well believe that the defendants intended to do what the informant claimed they had planned; but their actual conduct did not cross the boundary between preparation and attempt. Appellants were afterwards found to be armed and may have appeared to be reconnoitering Bay View Federal, but none made any move toward the bank. The situation is therefore distinguishable from *United States v. Stallworth,* 543 F.2d 1038 (2d Cir.1976), where the *testimony* of an informant established the defendant's intent. The defendant was armed, had stolen materials for disguises, had reconnoitered the bank and moved toward it; all of this confirmed in a taped conversation in which he had discussed the plan of attack. *Id.* at 1041.

The government argues the generality that movement toward a bank is not required to show attempt, citing *United States v. Snell,* 627 F.2d 186 (9th Cir.1980), *cert. denied,* 450 U.S. 957, 101 S.Ct. 1416, 67 L.Ed.2d 382 (1981). But that case is distinguishable upon several grounds. In *Snell,* the defendants planned to kidnap a bank manager and his wife, and to hold her hostage while forcing the manager to go to the bank to obtain money. They went to the house and knocked on the door, but the plan was frustrated when the wife came to the door accompanied by a Great Dane.

One of the co-conspirators later revealed the plan to the police. Snell was convicted of attempted robbery of a federal bank. The court observed that Snell's entry into the home was "factually precedent but so far as the total scheme is concerned is analytically little different than entry into the bank itself." *Id.* at 188. There is no comparable entry, nor movement toward the bank in this case. The conduct in *Snell* was unequivocal; that here is entirely tentative and unfocused. Fortified by their information from the informant, the police concluded that, standing by their car 150 feet away, the defendants were "casing" the bank; but resort to that knowledge cannot be utilized because the prosecution had eschewed its use. Not only did appellants not take a single step toward the bank, they displayed no weapons and no indication that they were about to make an entry. Standing alone, their conduct did not constitute that requisite "appreciable fragment" of a bank robbery, nor a step toward commission of the crime of such substantiality that, unless frustrated, the crime would have occurred.[7]

### B. *Conspiracy*

▇▇▇ We determine that in the absence of the excluded information, a rational jury could not have concluded beyond a reasonable doubt that there was a conspiracy to commit federal bank robbery on the same reasoning that invalidates the attempt charge. That they were present and together suggests a meeting of their minds to be there; but it does not justify the inference that they had assembled to carry out an agreement to rob the federal bank or any other premises. The evidence supporting the conspiracy charge fares no better than does that relating to an attempt.

### C. *Use of Firearm in the Commission of a Federal Offense*

Since we have found the evidence insufficient to sustain convictions for conspiracy

---

7. In light of our conclusion that there was insufficient evidence to show intent and a substantial step toward bank robbery, we need not consider appellants' argument that their actions were not sufficiently intimidating to constitute a violation of 18 U.S.C. § 2113(a), and we need not address Cook's argument that the twenty year sentence he received for attempted bank robbery constituted cruel and unusual punishment.

and for attempted bank robbery, there is left no federal crime in the perpetration of which firearms were or could have been used. The conviction of the offense in 18 U.S.C. § 924 falls of its own weight.

### III. Other Issues

#### A. Objections to Grand Jury Proceedings and the Indictment

Cook argues that there was insufficient evidence of conspiracy before the grand jury to support his indictment, and that the prosecutor committed misconduct before the grand jury by mischaracterizing the events of December 22, 1983 in order to secure the indictment, thus deceiving the grand jury. He also argues that while hearsay evidence was presented to the grand jury, exculpatory materials were not. Finally, he complains that the indictment was signed by a United States Attorney, but there was no evidence that that person was present at the grand jury hearing.

■ As a general rule, claims of defects in an indictment must be raised prior to trial. Fed.R.Crim.P. 12(b); *United States v. Pollock*, 726 F.2d 1456, 1464 (9th Cir.1984); *United States v. Gunter*, 631 F.2d 583, 586 (8th Cir.1980). Cook filed a pretrial motion to dismiss the indictment for insufficient evidence, but did not raise many of these arguments before the district court. He has therefore waived most of his claims.

■ Moreover, an indictment regular on its face and returned by a legally constituted and unbiased grand jury is presumed to be valid; the party challenging this presumption faces a heavy burden. *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); *Martin v. United States*, 335 F.2d 945, 949 (9th Cir.1964). Cook does not meet this burden. The failure of a prosecutor to present exculpatory evidence to a grand jury does not invalidate an indictment. *United States v. Leverage Funding Systems, Inc.*, 637 F.2d 645, 648 (9th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). Hearsay evidence is admissible and its admission does not inval-

idate an indictment. *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Hartlerode*, 467 F.2d 1280, 1281–82 (9th Cir.1972).

There has been no showing that the government flagrantly manipulated, overreached, or deceived the grand jury such that dismissal of the indictment is warranted. *United States v. Sears, Roebuck & Co.*, 719 F.2d 1386, 1391–92 (9th Cir.1983), *cert. denied*, 465 U.S. 1079, 104 S.Ct. 1441, 79 L.Ed.2d 762 (1984). Cook presents no evidence that knowing perjury related to a material matter was presented to the grand jury. *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir.1977), *cert. denied*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). *See also, United States v. Samango*, 607 F.2d 877, 883 (9th Cir.1979) (dismissal of indictment proper where among other errors prosecutor submitted prejudicial, unnecessary transcripts to the grand jury). Since Cook's arguments lack any clear basis in fact and law, we reject his claims of impropriety.

#### B. Ineffective Assistance of Counsel

■ Cook argues that his trial counsel should have filed a bill of particulars demanding disclosure of the informant's identity and of his information. He asserts failure to do so constituted ineffective assistance. This argument is without merit. The demand for disclosure was vigorously pressed by the defense, but was denied by the trial court. There is no showing that counsel's efforts were not those of a reasonably competent practitioner or that failure to seek a bill of particulars deprived Cook of the opportunity to litigate the issue. He points to no deficient performance by trial counsel which prejudiced his defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

### IV. Selective Prosecution

Cook contends that he was selected for prosecution solely because he is Black and had been previously tried and acquitted of murdering a Sacramento police officer. He

did not raise this issue before the district court. We could view that failure as a waiver under Fed.R.Crim.P. 12(f). *United States v. Oaks*, 508 F.2d 1403, 1404 (9th Cir.1974). *See also United States v. Jarrett*, 705 F.2d 198 (7th Cir.1983), *cert. denied*, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984).

■ Even if we address the merits of his claim, it is clear that Cook has not stated the elements of selective prosecution, which are (1) that others are generally not prosecuted for the same conduct, and (2) that the decision to prosecute the defendant was based on such impermissible grounds as race, religion or the exercise of constitutional rights. *United States v. McWilliams*, 730 F.2d 1218, 1221 (9th Cir. 1984). Cook offered no proof that the government does not prosecute other individuals, whom it suspects of criminal conduct such as that involved in this case, or that the decision to prosecute him was based upon race or other impermissible grounds.

## CONCLUSION

We reverse the convictions of appellants on Counts I, II and III of the indictment. We affirm appellants' convictions on Count IV of the indictment. The judgments and sentences on Counts I, II and III are ordered vacated and set aside.

Because appellants are in custody and, with respect to the single conviction which today we affirm, may be eligible for discharge or release pursuant to the provisions of 18 U.S.C. §§ 4163 or 4205(a), we order that the mandate herein shall issue immediately upon the filing of this opinion.

REVERSED IN PART and AFFIRMED IN PART.