133 F.3d 930
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose MAGALLON, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Miguel Angel Ramos-Arangure, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Jose Olmos-Flores, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Luis Alberto Castro-Nino, Defendant-Appellant.
 Nos. 96-50315, 96-50319, 96-50316, 96-50318.
 United States Court of Appeals, Ninth Circuit.
 Dec. 17, 1997.
 
 Before: CANBY and THOMAS, Circuit Judges, and KING,** District Judge.
 MEMORANDYM*
 Jose Magallon ("Magallon"), Miguel Angel Ramos-Arangure ("Ramos"), Jose Olmos-Flores ("Olmos"), and Luis Alberto Castro-Nino ("Castro") appeal their jury convictions for possession of marijuana with the intent to distribute, in violation of 21 U.S.C. §§ 2 and 841(a)(1), and conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. We affirm the convictions of Ramos, Olmos, and Castro. We reverse Magallon's conviction and remand for a new trial.
 The parties are familiar with the facts, so we will only mention them here as necessary.
 I. Sufficiency of the Evidence
 All four appellants assert that the evidence at trial was insufficient to support their guilty verdicts. Evidence presented at trial is sufficient to support a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Sitton, 968 F.2d 947, 960 (9th Cir.1992). The evidence was more than sufficient to support each of the four verdicts.
 Olmos contends that the only evidence against him was his presence at the Montcalm residence, and that "mere presence" at the scene of the contraband is insufficient to support a verdict under United States v. Disla, 805 F.2d 1340, 1351 (9th Cir.1986); United States v. Weaver, 594 F.2d 1272, 1275 (9th Cir.1979); and United States v. Cloughessy, 572 F.2d 190 (9th Cir.1977). Contrary to Olmos' contention, there was incriminating evidence that went beyond Olmos' "mere presence" at the scene. Olmos drove the Pontiac to the bar to meet up with the U-Haul. Olmos drove the Pontiac back to the K & W. Olmos was driving the Pontiac when it arrived at the Montcalm residence. Olmos left the Montcalm residence in the van, though he arrived driving the Pontiac. Agents recovered radios set to the same frequency from both the van and the Pontiac. Ramos and Arreola each had Olmos' business card. Perhaps the most incriminating fact is that Olmos helped to let air out of the tires so that the van would fit in the garage. Olmos neglects to mention this fact in his brief. These facts, taken together, establish more than "mere presence" at the scene of the crime, and are more than sufficient to uphold the guilty verdict.
 Ramos' main insufficiency argument is that the government offerred no evidence that he was a member of the conspiracy. Ramos cites United States v. Cloughessy, 572 F.2d 190 (9th Cir.1977) for the proposition that knowledge of the conspiracy, presence at the scene of the substantive offense, and a desire to see it succeed are insufficient to support a conspiracy conviction. Ramos argues that the only evidence against him was that he helped remove the sealed box from the van and helped to remove clay pots from the U-Haul. Ramos argues that this is insufficient to prove an illicit agreement between himself and any other individual. Additionally, Ramos, like Olmos, argues that the evidence underlying the possession charge is insufficient because it merely places him at the scene. Ramos, like Olmos, omits mention of other incriminating evidence against him. Ramos rode as a passenger in the Pontiac to meet up with the U-Haul. Ramos rode back to K & W in the Pontiac and helped to unload the U-Haul. Agents testified that the men who unloaded the U-Haul were nervously looking over their shoulders as if looking for something or someone. Ramos rode in the Pontiac to the Montcalm residence and assisted Olmos in letting air out of the tires to fit the van in the garage. Ramos helped unload the box from the van. Ramos left the Montcalm residence driving the van, though he had arrived with Olmos in the Pontiac. His telephone number was written in the address book that Castro kept at the K & W. When he was arrested, Ramos had on his person Olmos' telephone number, Arreola's telephone number, Castro's telephone number, and a copy of the registration to Magallon's van. These.facts, taken in conjunction with one another, are more than sufficient to support his verdict.
 Castro argues that there was no evidence at trial that he made an agreement with anyone. He argues that the only evidence against him was that he owned the K & W and that he used the forklift to transfer the sealed steel box from the U-Haul to the white van. There was additional evidence at trial harmful to Castro's case that Castro neglects to mention. Agents observed Castro covering the steel box with cardboard scraps after unloading it from the U-Haul. Gonzalez and Medina testified that Castro knew the K & W was used for drug trafficking and that he built steel compartments for drug trafficking like the one used in this case. Castro had Magallon's telephone number on his person aid both Ramos' and Magallon's telephone numbers on file in the K & W office. From this evidence it is possible to infer that Castro knew that drugs were in the steel box and also that he was a member of the conspiracy to traffic drugs through his truck repair business.
 Magallon argues that even viewing the evidence in the light most favorable to the government, all he did was help move a sealed inconspicuous metal box out of the U-Haul and loan his van to the conspirators so that they could transport it further. Magallon cites United States v. Bishop, 959 F.2d 820, 831 (9th Cir.199:) for the proposition that while a plausible hypothesis consistent with innocence is not sufficient to invalidate a conviction, there must be evidence that would allow a jury to conclude beyond a reasonable doubt that the defense hypothesis was incorrect. While this is a correct statement of law, we conclude that there is such evidence in the record. Magallon was one of the five men unloading the U-Haul, the metal box was conspicuously hidden in the U-Haul behind a wall of clay pots, the men unloading the pots were looking around nervously while they were unloading the pots. Magallon's assistance with the unloading, coupled with his ownership of the van, makes it reasonable to infer that Magallon knew what his van was being used for. Magallon's telephone number was written in the telephone book in K & W's office, along with Ramos' number, and Ramos had a copy of the registration for Magallon's van on his person at the time of his arrest. We conclude that this evidence was sufficient to support Magallon's conviction.
 II. The Identity of the Informant
 During the trial, it became apparent that the government had received information from an informant. The defense had filed a pre-trial motion on August 3, 1995 for the disclosure of witnesses, informants, and cooperating witnesses. In response, the government filed an ex parte submission to the court. The court reviewed the submission and stated at a pre-trial hearing-and again at trial-that there was no confidential informant that was a percipient witness to any of the activities which formed the basis of the government's case. The court did not disclose the identity of the informant.
 The court's decision to deny disclosure of an informant is reviewed for abuse of discretion. United States v. Gil, 58 F.3d 1414, 1421 (9th Cir.), cert. denied, 116 S. Ct. 430 (1995); United States v. Buffington, 815 F.2d 1292, 1299 (9th Cir.1987). The privilege to withhold an informer's identity is limited, and must give way when the informer's identity is "relevant and helpful to the defense of the accused, or is essential to a fair determination of his case." United States v. Marshall, 532 F.2d 1279, 1232 (9th Cir.1976) (internal quotation omitted). The defendant has the burden of proving the need for disclosure. Id. at 1282; Buffington, 815 F.2d at 12:99.
 The defendants have not met their burden. The government's ex parte submission makes clear that the informer had no contact with the appellants. He was not a percipient witness to any of the activities that form the basis of the convictions. The appellants speculate that the informer might have been able to testify that one or more of their number were not involved in the conspiracy. However, mere speculation that the informer might possibly be of some assistance is not sufficient to overcome the public interest in the protection of the informer. Marshall, 532 F.2d at 1.282; Buffington, 815 F.2d at 1299; Lannom v. United States, 381 F.2d 858, 861 (9th Cir.1967).
 III. Prior Bad Acts
 Castro and Ramos argue that the district court erred in admitting evidence of prior bad acts. The standard of review for a district court's decision to admit evidence of prior bad acts is abuse of discretion. United States v. Arambula-Ruiz, 987 F.2d 599, 603 (9th Cir.1993).
 Castro and Ramos both argue that they did not receive adequate notice in advance of trial of the government's intention to use Rule 404(b) evidence. The rule for disclosure of 404(b) evidence is that, upon request of the defense, "the prosecution ... shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed.R.Evid. 404(b).
 In this case the government first contacted Castro's attorney about the proposed 404(b) evidence more than two months before trial. The government gave formal written notice of its intent to use the evidence more than a month before trial. The government turned over agent reports relating to the secret compartment and provided defense counsel with the names and telephone numbers of the two witnesses the government planned to call. Castro knew well in advance of trial that the government planned to use the 404(b) evidence.
 Ramos argues that his conviction must be reversed because lie did not receive adequate notice that a government witness would testify that he had seen Ramos at the K & W on prior occasions. Ramos' argument fails for three reasons. The testimony was very brief, very general, and hardly substantial. Ramos failed to object at trial. Ramos has not articulated how this evidence affected his strategy at trial or how prior notice of this testimony would have affected his strategy.
 Castro also argues that the Rule 404(b) evidence that he had distributed drugs to his employees was irrelevant and highly prejudicial. He cites U.S.v. Hill, 953 F.2d 452, 457 (9th Cir.1991) for the proposition that in a conspiracy case, it is an abuse of discretion for a district court to admit Rule 404(b) evidence of prior distribution of small amounts of drugs. Hill does not stand for this proposition. In Hill, the court
 ruled that it was an abuse of discretion to admit evidence of prior drug use-not distribution-in a conspiracy case when the government failed to establish the relevancy of the appellant's prior drug use. That is not the case here.
 IV. Limiting Instruction
 Olmos argues that his conviction must be reversed because the district court failed to issue a proper limiting instruction regarding the Rule 404(b) evidence against Castro and Ramos. The court instructed the jury that "[y]ou have heard evidence of other acts by one or more defendant. You may consider that evidence only as it bears on the defendant's knowledge, planning and intent, and for no other purpose." (8-103). Olmos argues that this instruction is inadequate because the reference to "other acts" and "defendant's" is ambiguous.
 Olmos did not raise this objection at trial, so we review for plain error. United States v. Whitmore, 24 F.3d 32, 34 (9th Cir.1994). Under this standard, Olmos has the burden of proving that (1) there was indeed an error; (2) the error was clear or obvious; and (3) the error was prejudicial to the defendant, meaning that it affected the outcome of the case. Id. at 34-35. Olmos hae not identified a clear error. Although we agree that the instruction could have been clearer, it is neither misleading nor an incorrect statement of the law. Further, we find it very unlikely that any ambiguity in this instruction affected the outcome of Olmos' verdict.
 V. Denial of the Motion to Sever
 Ramos argues that the district court abused its discretion when it denied his motion to sever. Ramos moved to sever on grounds that he was the only defendant in the case who did not have a history of prior bad acts that could be used against him. Ramos argues that this fact entitled him to a separate trial because it was impossible for the jury to distinguish Ramos' life history from that of the other defendants.
 Motions to sever are committed to the sound discretion of the trial court. United States v. Matta-Ballesteros, 71 F.3d 754 (9th Cir.1995). In order to justify severance, the burden is on Ramos to show that joinder is so unduly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever. United States v. Brashier, 548 F.2d 1315, 1324 (9th Cir.1976). In this case, the court gave the jury a limiting instruction. Ramos does not challenge the adequacy of the particular instruction given; he challenges whether any instruction could be adequate. This argument is unavailing; the Ninth Circuit has previously ruled that an appellant's fears of guilt by association can be alleviated through proper jury instructions. United States v. Patterson, 819 F.2d 1495, 1503 (9th Cir.1987); United States v. Polizzi, 801 F.2d 1543, 1554 (9th Cir.1986).
 VI. Refusal to Allow Expert Testimony
 Ramos' defense was that he was a day laborer who was unwittingly hired to move a box which contained drugs. Ramos had sought to admit the testimony of an expert in Mexican labor practices who would have testified that it is common for individuals of Mexican descent to stand on the street corner and be hired for day-labor jobs and that it is common for such individuals to not know their employers or the exact nature of the work they are performing. Ramos argues that such evidence "would have provided the only corroborating testimony to appellant's defense." The district court refused to allow the expert to testify on grounds that the information was common knowledge in San Diego and that the testimony would not assist a jury to understand a material issue in the case.
 The Sixth Amendment compulsory process clause protects the criminal defendant's right to present testimony. People of the Territory of Guam v. Palomo, 35 F.3d 368, 374 (9th Cir.1994), cert. denied, 513 U.S. 1089 (1995). The Sixth Amendment compulsory process clause is subject to limitations designed to facilitate the orderly presentation of facts and evidence. Taylor v. Illinois, 484 U.S. 400, 411 (1988). The standard of review for a district court's decision to preclude expert testimony is abuse of discretion. United States v. Castaneda, 94 F.3d 592 (9th Cir.1996); United States v. Rubio-Villareal, 927 F.2d 1495, 1502 (9th Cir.1991).
 Rule 702 of the Federal Rules.of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702 (emphasis added). Ramos has not explained how the expert testimony would "assist the trier of fact to understand the evidence" or "determine a material fact." The expert's testimony was general and did not relate to any conduct that was observed on the date of Ramos' arrest. We hold that the district court's exclusion of this evidence was not an abuse of discretion. Cf. Rubio-Villareal, 927 F.2d at 1502 n. 6 (exclusion of expert testimony (1) that the failure to register automobiles is a common problem in Mexico and (2) regarding lifestyles of Mexicans in the lower socio-economic bracket, held not to be an abuse of discretion).
 The district court also refused to allow a handwriting expert to testify regarding a receipt that Magallon claimed to have signed at an auto parts store the morning of the crime. Magallon's attorney argued that his client could not have been one of the five men who unloaded the U-Haul at the K & W because he was not present at the scene until he drove his white van into the K & W yard at 11:25 a.m. A handwriting expert the government retained before trial opined that the signature on the receipt was not Magallon's. The government gave advance notice that it intended to call the expert at trial. Magallon retained a handwriting expert to rebut the anticipated testimony of the government's handwriting expert. The government objected at a pre-trial motions hearing that it did not receive sufficient notice that Magallon intended to call an expert witness for rebuttal. The court overruled the government's objection, and this colloquy followed:
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 TABLE
 Later, the government opted to not call its handwriting expert in its case-in-chief. Magallon, whose counsel had agreed to call its handwriting expert only as a rebuttal witness, changed his mind the day before the government rested. Magallon faxed notice of his intention to call his handwriting expert in his case-in-chief. The government moved to exclude this evidence on grounds of the representations counsel made at the pre-trial motions hearing. The trial judge initially denied this motion, but after reading the transcript of pre-trial proceedings-which were presided over by a different judge-the trial judge reversed himself and refused to allow Magallon's expert to testify.
 Magallon argues that this preclusion violated his Sixth Amendment right to present evidence in his defense. Although we consider this a very close question because of the stipulation and counsel's representations to the court, we agree. There was no dispute that the testimony that the, handwriting expert would have offered was appropriate expert testimony relevant to Magallon's defense. The government would not have been prejudiced by the testimony because the government had already retained a handwriting expert. In fact, the only reason the defense retained a handwriting expert was because it expected that the government would call its handwriting expert as a witness. Although counsel for Magallon made a representation to the court: that he would only call his handwriting expert as a rebuttal witness, counsel was unaware of his own expert's conclusions at the time he made this representation to the court. There is no evidence that counsel acted in bad faith in waiting until the eleventh hour to notify the government of its intention to call the witness. Cf. United States v. Peters, 937 F.2d 1422, 1426 (9th Cir.1991) (witness exclusion is appropriate only in cases of willful and blatant discovery violations).
 Nos. 96-50316, 96-50318, and 96-50319 AFFIRMED;
 No. 96-50315 REVERSED and REMANDED.
 
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3